FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

FREEPLAY MUSIC INC.,                          :
                                              :
           Plaintiff,                  :
                                              :
     -against-                 :
                                            :
SPANISH BROADCASTING SYSTEM, INC., COX  :
RADIO, INC., CUMULUS MEDIA, INC., SALEM  :       04 Civ. 5238 (GEL)
COMMUNICATIONS CORPORATION, ENTERCOM :
COMMUNICATIONS CORP., BEASLEY  :
BROADCAST GROUP, INC., CITADEL BROAD-  :
CASTING CORPORATION, and VIACOM INC.,  :
                                            :
        Defendants.              :
                                            :
------------------------------------------------------------------- X

### MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS BY DEFENDANTS COX RADIO, INC., CUMULUS MEDIA, INC., ENTERCOM COMMUNICATIONS CORP., BEASLEY BROADCAST GROUP, CITADEL BROADCASTING CORPORATION AND VIACOM INC.

Bruce P. Keller (BK-9300)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
Attorneys for Beasley Broadcast Group, Inc.
Entercom Communications Corp., and
Citadel Broadcasting Corporation

Robert Penchina (RP-5866)
LEVINE SULLIVAN KOCH & SCHULZ, LLP
230 Park Avenue, Suite 1160
New York, NY 10169
(212) 850-6109
Attorneys for Viacom Inc.

Frederic S. Newman (FN-3174)
Edward P. Boyle (EB-1294)
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212) 689-8808
Attorneys for Defendant Cox Radio, Inc.

Steven I. Weisburd (SW-5325)
Abbey Green (AG-9293)
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 835-1400
Attorneys for Cumulus Media, Inc.

*Of Counsel*
Michael D. Hays
William A. Goldberg
DOW LOHNES & ALBERTSON, PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, D.C. 20036
(202) 776-2000

21804699v9

Table of Contents

Page

Preliminary Statement ....................................................................................................1

I.      FREEPLAY CANNOT STATE A CLAIM FOR COPYRIGHT
          INFRINGEMENT .......................................................................................2

     A.    Sound Recording Performance Rights Do Not Exist For The Traditional,
          Over-The-Air Radio Broadcasts Alleged By Freeplay. ..........................................3

     B.    Defendants Were Licensed To Perform Publicly The Allegedly Infringed
          Registered Compositions, And The Few Remaining Non-Registered
          Compositions Are Non-Actionable. ........................................................................6

II.     FREEPLAY'S CLAIM FOR FALSE DESIGNATION OF ORIGIN IS
          BARRED BY THE COPYRIGHT ACT.................................................................9

III.    FREEPLAY'S STATE LAW CLAIMS ARE PREEMPTED.............................12

CONCLUSION...............................................................................................................14

21804699v9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Movie Classics Co. v. Turner Entmt't Co.*
**922 F.Supp. 926 (S.D.N.Y. 1996)** ...................................................................13

*Bell v. Blaze Magazine*
**2001 WL 262718 (S.D.N.Y. Mar. 16, 2001)**.......................................................3

*Bonneville International Corp. v. Peters*
**347 F.3d 485 (3d Cir. 2003)** .............................................................................5

*Borrego v. BMG U.S. Latin*
**2004 WL 729170 (9th Cir. Apr. 5, 2004)**...........................................................11

*Boston International Music, Inc. v. Austin*
**2003 WL 22119228, (D. Mass. Sept. 12, 2003)**....................................................11

*Buffalo Broadcasting Co., Inc. v. Amer. Society of Composers Authors and Publishers*
**744 F.2d 917 (2d Cir. 1984)** ............................................................................8

*Carroll v. Kahn*
**U.S.Dist. LEXIS 17902 (S.D.N.Y. Oct. 9, 2003)**...........................................10, 11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
**539 U.S. 23 (2003)**...........................................................................................10

*DeJesus v. Sears, Roebuck & Co. Inc.*
**87 F.3d 65 (2d Cir. 1996)** ................................................................................2

*EFS Marketing, Inc. v. Russ Berrie & Co.*
**76 F.3d 487 (2d Cir. 1996)** ..............................................................................11

*Guedes v. Marcano Martinez*
**131 F. Supp.2d 272 (D. P.R. 2001)** .....................................................................3

*Hirsch v. Arthur Andersen & Co.*
**72 F.3d 1085 (2d Cir. 1995)** ...............................................................................7

*Leeds v. Meltz*
**85 F.3d 51 (2d Cir. 1996)** .................................................................................2

*Lone Wolf McQuade Associate v. CBS, Inc.*
**961 F. Supp. 587 (S.D.N.Y. 1997)** ......................................................................8

i

21804699v9

*Markogianis v. Burger King Corp.*
   **1997 WL 167113, (S.D.N.Y. Apr. 8, 1997)** ...........................................................13

*Maurizio v. Goldsmith*
   **2001 WL 1568428 (S.D.N.Y. Dec. 5, 2001)**...........................................................13

*Nat'l Ass'n of Freelance Photographers v. Associated Press*
   **1997 U.S. Dist. LEXIS 19568 (S.D.N.Y. Dec. 10, 1997)** ......................................9

*National Basketball Associate v. Motorola, Inc.*
   **105 F.3d 841 (2d Cir. 1997)** ..................................................................................12

*Smith v. New Line Cinema*
   **2004 WL 2049232 (S.D.N.Y. Sept. 13, 2004)**.......................................................10

*Twentieth Century Fox Film Corp. v. Marvel Enterprise, Inc.*
   **155 F. Supp.2d 1 (S.D.N.Y. 2001)** ........................................................................13

*Weber v. Geffen Records, Inc.*
   **63 F. Supp.2d 458 (S.D.N.Y. 1999)** ...............................................................11, 13

## FEDERAL STATUTES

17 U.S.C. § 101.................................................................................................................4, 6

17 U.S.C. § 106.............................................................................................................3, 4, 13

17 U.S.C. § 114.................................................................................................................4, 5

17 U.S.C. § 301....................................................................................................................12

17 U.S.C. § 411(a) ................................................................................................................9

Fed. R. Evid. § 201 ..............................................................................................................7

15 U.S.C. § 1125.............................................................................................................9, 10

## MISCELLANEOUS

M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright* § 8.22[B][1][b] at 8-308.4 (2004) 5

S. Rep. No. 104-128
   1995 U.S.C.C.A.N. 356 (1995) ...........................................................................5

21804699v9

Cox Radio, Inc. ("Cox"), Cumulus Media, Inc. ("Cumulus"), Entercom Communications Corp. ("Entercom"), Beasley Broadcast Group ("Beasley"), Citadel Broadcasting Corporation ("Citadel"), and Viacom Inc. ("Viacom"), submit this memorandum in support of their motion, pursuant to Rule 12(b)(6), to dismiss the Complaint filed against them by Freeplay Music, Inc. ("Freeplay").

### Preliminary Statement

Freeplay's Complaint should be dismissed because it has four fatal flaws:

(1)  It asserts one copyright claim -- for the public performance of sound recordings alleged to have been broadcast over traditional radio stations -- that Congress has taken great pains to emphasize cannot be brought;

(2)  It asserts another copyright claim -- for infringement of the musical compositions that underlie those sound recordings -- even though Freeplay knows the Defendants were licensed to perform Freeplay's compositions by its agent, Broadcast Music Inc. ("BMI");

(3)  It bases its Lanham Act claim on a theory that the Supreme Court emphatically rejected, just last year, as a "mutant" claim that fails as a matter of law; and

(4)  It asserts three state law causes of action that are preempted by the express language of Section 301 of the Copyright Act, as multiple decisions from this Circuit make plain.

All of these flaws were either directly pointed out to Freeplay or otherwise easily discernable before it filed the Complaint.  As explained in more detail below, the Complaint should be dismissed.

## I.    FREEPLAY CANNOT STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

Freeplay's Complaint contains conclusory statements to the effect that defendants "produced, exploited and distributed" "radio programming reproducing part of" Freeplay's copyrighted compositions and sound recordings,[1] Compl. ¶¶ 17, 19.  The only facts alleged to provide content to these conclusions, however, are that Defendants -- traditional radio broadcasters that produce radio programming "through the radio airwaves" Compl. ¶ 4 (Cox); ¶ 5 (Cumulus); ¶ 7 (Entercom); ¶ 8 (Beasley); ¶ 9 (Citadel); ¶ 10 (Viacom), -- *broadcast* portions of Freeplay's copyrighted works at the times noted in Exhibits 1-7 and 9 to the Complaint.  Compl. ¶ 19.[2]

Defendants cannot be liable for copyright infringement as a result of having made broadcasts containing these works under either of the two separate copyright claims

---

[1]    Although the Court is to take all well pled factual allegations as true on a motion to dismiss under Rule 12(b)(6), "conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  *DeJesus v. Sears, Roebuck & Co. Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (internal citation omitted) (dismissing complaint where conclusory allegation of legal requirements was unsupported by factual allegations); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("bald assertions and conclusions of law" not sufficient to defeat 12(b)(6) motion).

[2]    Freeplay appears to have misnumbered its exhibits.  Compare Compl. ¶¶ 14, 16 (identifying Exs. 1-8 as the broadcast logs and Ex. 9 as its copyright registrations) with Exs. 1-7, 9 (alleged broadcast logs) and Ex. 8 (copyright registrations).  In addition, Citadel has noticed that it does not own all of the radio stations that appear in its alleged broadcast logs.  Declaration of Patricia M. Stratford, dated October 14, 2004, ("Stratford Decl."), ¶ 5.

2

Freeplay asserts. [3]   To begin, Freeplay's allegations that Defendants' over-the-air radio

broadcasts violate its copyright in sound recordings is completely frivolous:  The

Copyright Act expressly states that holders of copyrights in sound recordings ***do not have***

any performance rights with respect to the traditional, over-the-air radio broadcasts

alleged to have occurred here.  *See* 17 U.S.C. § 106(6) (limiting performance rights for

sound recordings to digital audio transmissions).  Moreover, although the Copyright Act

does grant performance (broadcast) rights to the holder of a copyright in musical

compositions underlying such sound recordings, Freeplay, through BMI,  has granted

broadcast licenses for these compositions to Defendants.  Its claims must therefore be

dismissed.  *See Bell v. Blaze Magazine*, No. 99 Civ. 12342, 2001 WL 262718 (S.D.N.Y.

Mar. 16, 2001) (granting motion to dismiss upon finding that copyright infringement was

not properly alleged).

### A.      Sound Recording Performance Rights Do Not Exist For The Traditional, Over-The-Air Radio Broadcasts Alleged By Freeplay.

Freeplay's claim that Defendants violated its public performance rights in its

sound recordings must be dismissed because Freeplay does not allege, and could not

---

[3]   Count 1 alleges that Defendants infringed its musical compositions, protected under Section 102(a)(2) of the Copyright Act.  Count 2 alleges infringement of Freeplay's copyright in the sound recordings created from those underlying compositions, protected under Section 102(a)(7).  Both of these claims arise out of the allegedly unauthorized public performance of Freeplay's music on the radio.  *See Guedes v. Marcano Martinez*, 131 F. Supp. 2d 272, 276 (D. P.R. 2001) ("[t]he transmission of a copyrighted work to the public by means of a radio broadcast constitutes a performance [under the Copyright Act].").

21804699v9

truthfully allege, that the radio broadcasts to which Freeplay objects were: (1) "by means

of a digital audio transmission," 17 U.S.C. § 106(6); **and** (2) by means of either (a) an

"interactive service" or (b) a subscription broadcast transmission. 17 U.S.C. § 114(d).

Section 106(6), as amended in 1995, grants the copyright holder:

the exclusive right to do and to authorize any of the following: . . . (6) *in the case of sound recordings,* **to perform** *the copyrighted work* **publicly by means of a digital audio transmission.**

17 U.S.C. § 106(6) (emphasis added).[4]  To be certain that no one mistook the extremely

limited scope of this digital audio performance right, the Copyright Act expressly *denies*

a copyright owner like Freeplay a public performance right in anything other than certain

digital audio transmissions:

The exclusive rights of the owner of the copyright in a sound recording . . . **do not include any right of performance under Section 106(4).**

17 U.S.C. 114(a) (emphasis added).  Because the Complaint contains no allegation that

any of the Defendants' transmissions were "digital audio transmissions," Freeplay's

claim can be dismissed on this basis alone.

---

[4]     A "digital transmission" is defined as a "transmission in whole or in part in a digital or other non-analog format."  17 U.S.C. § 101.  A "digital audio transmission" is defined as "a digital transmission as defined in section 101, that embodies the transmission of a sound recording.  This term does not include the transmission of any audiovisual work."  17 U.S.C. § 114(j)(5).  The definitions of "interactive service" and "nonsubscription" transmission make abundantly clear that traditional radio broadcasts over "radio airwaves," Compl. ¶¶ 4, 5, 7, 8, 9, 10, do not fall within 17 U.S.C. § 106(6).  *See* 17 U.S.C. § 114(j)(7), (14).

21804699v9

Freeplay's sound recording claim also fails because the only type of digital audio transmissions that can violate the public performance right in Section 106(a) are those that are "part of" subscription broadcast transmissions or interactive services:

> (d) Limitations on the Exclusive Right.  –  *Notwithstanding the provisions of section 106(6) –*
>
>> (1) Exempt Transmissions and Retransmissions.  –  The *performance of a sound recording* publicly by means of a digital audio transmission, *other than as a part of an interactive service, is not an infringement of section 106(6) if the performance is part of –*
>>
>>> (A) *a nonsubscription broadcast transmission. . . .*

17 U.S.C. § 114(d) (emphases added).

The transmissions that Freeplay identifies, however, are the traditional, over-the-air radio broadcasts, *see* Exs. 1-7, 9 that Congress exempted from Section 106(a).

> When creating this new [sound recording public performance right], however, Congress also created exemptions from it.  Of specific application to the present case was the exemption added . . . for a noninteractive, "nonsubscription broadcast transmission."  ***The paradigmatic "nonsubscription broadcast transmission" was a traditional over-the-air radio broadcast.***

*Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 488 (3d Cir. 2003) (emphasis added).  *See* M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright* § 8.22[B][1][b] at 8-308.4 (2004) ("to the extent that a traditional radio station  . . . broadcasts programs that include performances of sound recordings, that activity is exempt from liability.").[5]  Simply put,

---

[5]    Similarly, the Senate Report for the 1995 amendment provided:

> *The classic example of such an exempt transmission is a transmission to the general public by a free over-the-air broadcast station, such as a traditional radio or television station, and the Committee intends that such*

21804699v9

Freeplay's own exhibits, identifying the performances as having been made by traditional, over-the-air radio stations, show it cannot possibly state a "Sound Recording Copyright Infringement Claim."  Compl. ¶¶ 25-29.

> ### B. Defendants Were Licensed To Perform Publicly The Allegedly Infringed Registered Compositions, And The Few Remaining Non-Registered Compositions Are Non-Actionable.

Freeplay's other copyright claim, for infringement of the underlying musical compositions, fares no better.  First, with respect to 153 of the 158 musical works involved, each Defendant has a license to perform them over the radio.  Second, as for the five remaining works, Freeplay has no copyright registration and, therefore, cannot state any claim of infringement.

Freeplay granted to BMI, a performing rights society similar to ASCAP, the right to license on Freeplay's behalf the public performance of certain musical works, which are listed on the BMI website ("BMI Repertoire").  Declaration of William A. Goldberg dated October 13, 2004, ¶ 4 ("Goldberg Decl.").  *See* 17 U.S.C. § 101 (definition of "performing rights society" includes "BMI" ).  Of the 158 distinct musical works alleged to have been infringed by the Defendants, 153 are included in the BMI Repertoire.  Goldberg Decl. ¶¶ 4-5.  Each Defendant in this case is the licensee of BMI by virtue of a Blanket/Per Program License Agreement (the "BMI Licenses").  True and correct copies

---

> *transmissions be exempt* regardless of whether they are in a digital or
> nondigital format, in whole or in part.

S. Rep. No. 104-128 at 18, 19, reprinted in 1995 U.S.C.C.A.N. 356 (1995) (emphasis added).

6

of Defendants' respective BMI Licenses are attached as exhibits to the Affidavit of John

Dickey and the Declarations of William A. Goldberg, John C. Donlevie, Caroline

Beasley, Patricia M. Stratford, and Robert Penchina submitted herewith.[6]

      The BMI License granted to each Defendant specifically permits each Defendant

to perform publicly through a radio broadcast all musical compositions appearing in the

BMI Repertoire:

> *Over-the-Air-Signal.*  BMI grants to LICENSEE for the Term a non-exclusive
> license to publicly perform in the U.S. Territory, by radio broadcasting on Station,

---

[6]    The BMI License for each Defendant is submitted herewith as follows:  the BMI
License for Defendant Cox Radio, Inc. is Exhibit A to the Declaration of William A.
Goldberg dated October 13, 2004 ("Goldberg Decl."); the BMI License for
Defendant Cumulus Media, Inc. is Exhibit A to the Affidavit of John Dickey dated
October 12, 2004 ("Dickey Aff."); the BMI Licenses for Defendant Entercom
Communications Corp. are Exhibits A,B, and C to the Declaration of John C.
Donlevie, dated October 13, 2004 ("Donlevie Decl."); the BMI licenses for Beasley
Broadcast Group, Inc. are Exhibits A, B, C, and D to the Declaration of Caroline
Beasley, dated October 12, 2004 ("Beasley Decl."); the BMI licenses for Citadel
Broadcasting Corporation are Exhibits A and B to the Declaration of Patricia M.
Stratford, dated October 14, 2004 ("Stratford Decl."; and the BMI License for
Defendant Viacom is Exhibit A to the Declaration of Robert Penchina dated October
14, 2004 ("Penchina Decl.").

This Court can take judicial notice of these BMI Licenses because this information is
"capable of accurate and ready determination by resort to sources whose accuracy
cannot reasonably be questioned," i.e., BMI, which is Freeplay's own agent and
which Freeplay has entrusted with the authority to license its songs. *See* Fed. R.
Evid. § 201(b).  In evaluating a motion to dismiss, a court may consider matters of
which it has taken judicial notice. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d
1085, 1088, 1092 (2d Cir. 1995); Fed R. Evid. 201(f) (court may take judicial notice
"at any stage of the proceeding.").

7

non-dramatic performances of all musical works in the BMI Repertoire during the Term.[7]

The few specific facts (as opposed to conclusory assertions) actually pled by Freeplay show that all the Defendants did is that which was expressly authorized by the BMI license:  "publicly perform . . . by radio broadcasting . . . musical works in the BMI Repertoire."  *Compare* Compl. ¶ 23 *with* Exhibits 1-7, 9 (identifying the BMI licensed compositions and the radio stations that aired them).[8]  As a consequence, Freeplay has no cause of action for infringement of these compositions against Defendants.  The BMI licenses fully immunize Defendants from a claim of copyright infringement based on a violation of the performance right.  *See Buffalo Broadcasting Co., Inc. v. Amer. Society of Composers Authors and Publishers,* 744 F.2d 917, 934 (2d Cir. 1984) (Winter, J. concurring) ("[licenses] allow users of copyrighted music to avoid exposure to liability for copyright infringement."); *Lone Wolf McQuade Assoc. v. CBS, Inc.*, 961 F. Supp. 587, 598 (S.D.N.Y. 1997) (valid license is a complete defense to infringement claim).

---

[7]    Beasley, Citadel, Cox, Cumulus, Entercom, and Viacom all have licenses that cover the relevant period.  Goldber Decl. Ex. A; Dickey Aff. Ex. A; Donlevie Decl. ¶ 3, Exs. A-C; Beasley Decl. ¶ 5, Exs. A-D; Stratford Decl. ¶ 3, Exs. A & B; Penchina Decl. Ex. A.

[8]    *See* Goldberg Decl. ¶¶ 4-5 , submitted herewith.  Exhibits B and C to the Goldberg Declaration collectively establish that 153 of the 158 Freeplay works are in the BMI Repertoire.  Exhibit B lists the names of all 158 of the allegedly infringed works contained in the exhibits to the Complaint, along with the associated BMI work number.  Exhibit C contains an individual printout from BMI's website for each of these 153 works, which printout lists the BMI Work Number for each work and establishes that each such work is part of the BMI Repertoire.

21804699v9

As for the five musical works that Freeplay alleges were infringed but are not in the BMI Repertoire, none is covered by a copyright registration. *See* Compl. ¶¶ 16, 18 and Exs. 1-9; Goldberg Decl. ¶¶ 5-6.[9]  Because registration is a jurisdictional prerequisite to a copyright infringement claim, Freeplay cannot maintain its claim based on the alleged infringement of these works. *See* 17 U.S.C. § 411(a) ("no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim"); *Nat'l Ass'n of Freelance Photographers v. Associated Press*, 97 Civ. 2267 (DLC), 1997 U.S. Dist. LEXIS 19568 (S.D.N.Y. Dec. 10, 1997) (copyright claim dismissed under Rule 12(b)(6) because works were not registered).  Moreover, none of these five "works" even appears in Freeplay's musical library.  Goldberg Decl. ¶ 7.

## II.    FREEPLAY'S CLAIM FOR FALSE DESIGNATION OF ORIGIN IS BARRED BY THE COPYRIGHT ACT

Freeplay's third claim for relief, for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), is based entirely on the same few factual allegations underlying its copyright claims:  the allegedly unauthorized broadcasts of Freeplay compositions and sound recordings on the radio.  To recast these copyright claims as a Lanham Act claim,

---

[9]    The five works listed in the alleged broadcast logs attached to Freeplay's Complaint but not included in Freeplay's attached copyright registrations are as follows: MS_6.6_Copier_40_20_Final; MS_6.6_Copier_60_Final; MS_6.6 Dryer_40_20_Final; MS_6.6_Dryer_60_Final; and "Bounty Urban UIFULL.". Compare Compl. ¶¶ 14 and 16 with Exs. 1-7, 9 (alleged broadcast logs) and Ex. 8 (copyright registrations); *see also* Goldberg Decl. ¶¶ 5-6.

Freeplay simply recites that the use of its music without consent also constitutes a failure to credit Freeplay as the author of the copyrighted works.  Compl. ¶ 31.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the United States Supreme Court rejected this precise claim.  It held that the Lanham Act protects only "the producer of . . . tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods.'"  *Id.* at 37. Accordingly, when dealing with works of authorship, the term "origin" in 15 U.S.C. § 1125(a) refers not to the creator of the expressive work, but only to the producer of material objects in which that work is embodied.  *Dastar*, 539 U.S. at 37.  The Court reasoned that to find otherwise would "cause[ ] the Lanham Act to conflict with the law of copyright."  *Id.* at 33.  "Thus, the Supreme Court left the protection [of] the creative talent behind communicative products to the copyright laws."  *Carroll v. Kahn*, 03 Civ. 0656 (TJM), 2003 U.S. Dist. LEXIS 17902, at \*17 - \*18 (S.D.N.Y. Oct. 9, 2003).

*Dastar* requires Freeplay's Lanham Act claim to be dismissed as "a species of mutant copyright law" because Freeplay alleges only that the author of the communication embodied in the goods has been falsely designated.  Compl. ¶ 31 (by making unauthorized use of Freeplay's musical compositions and sound recordings "without consent of the plaintiff --each defendant is (i) likely to confuse the public and have [sic], upon information and belief, already confused the public by creating the false impression that certain of each defendant's radio programming is related to, affiliated with, authorized by, or emanate[s] from plaintiff"); *Dastar*, 539 U.S. at 34.  Courts in this Circuit have made clear that *Dastar* forecloses Lanham Act claims for failure to credit the

author of a copyrighted work. *See Smith v. New Line Cinema*, 03 Civ. 5274 (DC), 2004

WL 2049232, at *10-*11 (S.D.N.Y. Sept. 13, 2004) (holding that failure to credit author

of screenplay not actionable under the Lanham Act); *Carroll*, 03 Civ. 0656, 2003 U.S.

Dist. LEXIS 17902, at *17-*18 (rejecting Lanham Act claim based on failure to credit

plaintiff as author or producer of film).

Indeed, at least two other courts already have applied *Dastar* to foreclose claims

asserting false designations of origin in connection with musical compositions or sound

recordings. *Borrego v. BMG U.S. Latin*, No. 03-55430, 2004 WL 729170, at*1 (9th Cir.

Apr. 5, 2004) (unpublished) (unauthorized release of a musical album did not state a

claim for "reverse palming off" under the Lanham Act); *Boston International Music, Inc.*

*v. Austin*, Civ. A. 02-12148-GAO, 2003 WL 22119228, at *2 (D. Mass. Sept. 12, 2003)

(unauthorized reproduction and performance of music and sound recordings did not state

a claim for reverse palming off under the Lanham Act "because the plaintiffs' claims

were sufficiently covered by the law of copyright"). The result should be no different

here.[10]

---

[10]   Even before *Dastar*, Freeplay's allegations would have failed to state a Lanham Act
claim. Absent specific factual allegations of affirmative acts consisting of "more
than a violation of the author's copyright-protected right to credit and profit from a
creation," Courts in this Circuit routinely have dismissed Lanham Act claims based
on allegations of copyright infringement. *Weber v. Geffen Records, Inc.*, 63 F. Supp.
2d 458, 463 (S.D.N.Y. 1999) (quoting *Lipton v. The Nature Co.*, 71 F.3d 464, 473-74
(2d Cir. 1995)); *see, e.g., EFS Marketing, Inc. v. Russ Berrie & Co.*, 76 F.3d 487,
492 (2d Cir. 1996) ("[I]f plaintiffs were not required to assert some additional
misrepresentation of originality beyond mere use of a copyright symbol, they could
convert all improper copyright claims into Lanham Act violations.").

### III.   FREEPLAY'S STATE LAW CLAIMS ARE PREEMPTED

In its three state law claims, Freeplay alleges that the same few underlying factual allegations mean that "each defendant" has unfairly competed (Fourth Claim For Relief) and been unjustly enriched (Fifth Claim For Relief), entitling Freeplay to damages and injunctive relief (Sixth Claim For Relief).  *See, e.g.,* Compl. ¶¶ 36, 39, 41-43.  As a matter of black-letter law in this Circuit, each of those state law claims fails because they are substantively identical to Freeplay's copyright claims.  *See* Compl. ¶¶ 17-19, 23, 28.

In order for a state law claim to survive preemption by Section 301 of the Copyright Act,[11] the rights asserted must not be equivalent to those in the bundle of exclusive rights granted by the Act.  *See Nat'l Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997).  A state law claim, based on works covered by the Act, is deemed equivalent unless an "extra element," in addition "to the acts of reproduction, performance, distribution or display," is alleged.  *Id*. at 850 (quoting *Computer Assoc. Int'l Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).

---

[11]   Such preemption is required by Section 301 of the Copyright Act, which provides:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of Copyright as specified by § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, . . . are governed exclusively by this title.  [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301.

21804699v9

Here, Freeplay's state law claims are identical to those held preempted in cases like *Weber v. Geffen Records Inc.,* 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999).  Each is "not only . . . based on a copyright claim but also lacks any extra element making it sufficiently different from a copyright claim to escape preemption."[12]  Whether labeled unfair competition (Compl. ¶ 36), unjust enrichment (Compl. ¶ 39), or constituting an alleged irreparable harm for which injunctive relief is appropriate (Compl. ¶ 42), each of Freeplay's state law claims arises entirely out of an alleged act taken with respect to "compositions and sound recordings" that are protected works under the Copyright Act. Moreover, the only wrong identified is the purportedly unauthorized use of those works: the exclusive rights expressly granted by Section 106 of the Act.  17 U.S.C. § 106. "Courts in this circuit have consistently held that [such] claims . . . under New York Unfair Competition Law are preempted."  *American Movie Classics Co. v. Turner Entmt't Co.*, 922 F. Supp. 926, 933 (S.D.N.Y. 1996).  Because Freeplay has failed to allege any "extra elements" that distinguish its state law claims from copyright infringement, those claims are preempted.  *Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*, 155 F. Supp.2d 1, 24-25 (S.D.N.Y. 2001); *Maurizio v. Goldsmith*, 96 Civ. 4332 (LMM), 2001 WL 1568428, at *6 (S.D.N.Y. Dec. 5, 2001); *Markogianis v. Burger King Corp.*, 95 Civ. 4627 (JFK), 1997 WL 167113, at *5 (S.D.N.Y. Apr. 8, 1997).

---

[12]  This should not be news to Freeplay's counsel, who also drafted the virtually identical state law causes of action dismissed as preempted in *Weber*.  *See Weber*, 63 F. Supp. 2d at 459.

13

21804699v9

# CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint as against each of the Defendants.

Dated: New York, New York
October 15, 2004

HOGUET NEWMAN & REGAL, LLP

By: s_____
     Fredric S. Newman (FN-3174)
     Edward P. Boyle (EB-1294)
10 East 40th Street
New York, NY  10016
(212) 689-8808
Attorneys for Defendant Cox Radio, Inc.

*Of Counsel*:
Michael D. Hays
William A. Goldberg
DOW LOHNES & ALBERTSON, PLLC
1200 New Hampshire Avenue, N.W.
Suite 800
Washington, D.C.  20036

DEBEVOISE & PLIMPTON LLP

By /s_____
     Bruce P. Keller (BK-9300)
919 Third Avenue
New York, NY  10022
(212) 909-6000

Attorneys for Defendants Beasley
Broadcast Group, Entercom
Communications Corp., and
Citadel Broadcasting Corporation

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP

By /s_____
     Steven I. Weisburd (SW-5325)
     Abbey Green (AG-9293)
1177 Avenue of the Americas
New York, NY  10036
(212) 835-1400
Attorneys for Defendant
Cumulus Media, Inc.

LEVINE SULLIVAN KOCH & SCHULZ, LLP

By /s_____
     Robert Penchina (RP-5786)
230 Park Avenue, Suite 1160
New York, NY  10169
(212) 850-6109
Attorneys for Defendant Viacom, Inc.

14

21804699v9