```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
FREEPLAY MUSIC, INC.,                                       :
                                                            :
                              Plaintiff,                    :
                                                            :
        -v-                                                 :
                                                            :      04 Civ. 5238 (GEL)
COX RADIO, INC., CUMULUS MEDIA, INC.,                       :
ENTERCOM COMMUNICATIONS CORP.,                              :      **OPINION AND ORDER**
BEASLEY BROADCAST GROUP, INC.,                              :
CITADEL BROADCASTING CORP.,                                 :
and VIACOM INC.,                                            :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------x
```

Gabriel Fischbarg, Toptani Law Offices,
New York, NY, for Plaintiff.

Bruce P. Keller, Debevoise & Plimpton LLP,
New York, NY, for Defendant Beasley Broadcast
Group, Inc.

GERARD E. LYNCH, District Judge:

Freeplay Music, Inc. ("Freeplay"), the owner of copyrights in certain musical compositions and sound recordings, brings this action against defendants, corporate owners of various radio stations, charging violations of copyright and related claims. In a separate opinion issued this day, the Court grants in part and denies in part a motion to dismiss for failure to state a claim by all defendants. This opinion addresses the motion to dismiss for lack of personal jurisdiction by one defendant, Beasley Broadcast Group, Inc. ("Beasley"). Freeplay alleges that Beasley's contacts with New York are sufficient to support personal jurisdiction over it. Beasley argues that Freeplay's conclusory allegations merely parrot the relevant statutory language, and

that the actual facts alleged in the complaint are facially insufficient to support jurisdiction.[1] For the reasons that follow, Beasley's motion will be granted. Freeplay's request for jurisdictional discovery regarding Beasley's contacts with New York is denied.

## BACKGROUND

Freeplay is a New York corporation which creates musical compositions and sound recordings. Freeplay alleges that Beasley "produced, exploited and distributed in interstate commerce certain radio programming containing certain of [Freeplay's] [c]ompositions and [s]ound [r]ecordings," when Beasley broadcast Freeplay's musical works "synchronized" with other audio works. (Compl. ¶ 17; P. 12(b)(6) Mem. at 3.) Freeplay holds the copyright registrations for the 155 musical compositions and sound recordings at issue in this action. (Compl. ¶ 15; see Compl. Exs. 1-9.) Freeplay contracted with Broadcast Music, Inc. ("BMI"), a performing rights society, to license permission to perform these compositions and recordings on Freeplay's behalf. (P. 12(b)(6) Mem. at 6.) Freeplay argues that although Beasley is licensed by BMI to perform the Freeplay musical works in question, that license does not grant Beasley the necessary "synchronization rights" that would allow Beasley to use Freeplay's musical works in the manner alleged. (P. 12(b)(6) Mem. at 3; Fischbarg 12(b)(6) Decl. ¶ 3, Ex. B.) See generally Freeplay Music, Inc. v. Cox Radio, Inc., No. 04 Civ. 5238 (GEL), 2005 WL _____ (S.D.N.Y. June 22, 2005).

---

[1] Freeplay's memorandum in opposition to Beasley's motion contains additional allegations not stated in its complaint. Although a motion to dismiss for lack of personal jurisdiction is normally decided based on the pleadings, the Court considers the additional allegations here in the interests of fairness and of a full and efficient consideration of the jurisdictional issues in this case.

Beasley is a Delaware corporation with its principal place of business in Naples, Florida. (Compl. ¶ 8.) Beasley "produc[es], distribut[es], sell[s] and otherwise commercially exploit[s] radio programming" at its 41 radio stations. (Compl. ¶ 8; Fischbarg 12(b)(6) Decl. Ex. F.) Beasley alleges, and Freeplay does not dispute, that it does not have an office or employees in New York, that it does not own or operate a radio station in New York, and that none of its stations' over-the-air broadcast signals can reach New York. (Beasley Decl. ¶ 7.) Several of Beasley's radio stations, however, have websites accessible in New York through which the stations simulcast their radio broadcasts. (P. Mem. 3; Fischbarg Decl. ¶ 6, Ex. E.)

In addition to Beasley's websites, Freeplay alleges that Beasley has several other forms of contact with New York. Beasley radio stations syndicate radio programming produced in New York such as "The Howard Stern Radio Show," "Imus in the Morning," "ABC News," and "Bloomberg Radio News." (Fischbarg Decl. ¶ 3, Ex. B.) Beasley executives travel to New York approximately four times per year to meet with investment bankers. (P. Mem. 1.) Beasley executives have also spoken at radio industry conferences and seminars in New York at least six times since 2002. (Id. at 2.) New York companies purchase advertising time on Beasley radio stations. (Id.) Beasley also makes payments to performing rights societies based in New York, such as BMI and the American Society of Composers, Authors, and Publishers, for licenses to perform certain musical works. (Id.) Beasley has contracted with the New York investment bank Harris Nesbitt in connection with a $25 million stock buy-back scheduled to be completed within the next year. (Id. at 1-2, citing D. Mem. 4.) In March 2004, Beasley announced the completion of a $225 million revolving credit facility, funded by a consortium of lenders, and jointly arranged by two New York banks, Harris Nesbitt and Bank of New York. (Id.)

3

**DISCUSSION**

I.    <u>Legal Standard</u>

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to establish jurisdiction. <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003). Where no jurisdictional discovery has been conducted, the plaintiff need only establish a prima facie case, and allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff. <u>CutCo Indus. Inc. v. Naughton</u>, 806 F.2d 361, 365 (2d Cir. 1986). The motion must be denied if those allegations suffice as a matter of law. <u>Magnetic Audiotape</u>, 334 F.3d at 206.

A federal court sitting in diversity may exercise jurisdiction over a foreign defendant if the defendant is amenable to process under the law of the forum state. <u>Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 105 (1987); <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996). In New York, a court may exercise general jurisdiction over a non-domiciliary under New York Civil Practice Laws and Rules ("C.P.L.R.") § 301, and long-arm jurisdiction under C.P.L.R. § 302. The exercise of personal jurisdiction must also comport with constitutional due process requirements under <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). <u>Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.</u>, 264 F.3d 32, 37 (2d Cir. 2001).

II.    <u>General Jurisdiction in New York: C.P.L.R. § 301</u>

Under C.P.L.R. § 301, a New York court may exercise jurisdiction over a defendant "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its presence in the state." <u>Jazini v. Nissan Motor Co., Ltd.</u>, 148 F.3d 181,

184 (2d Cir.1998). "A defendant is doing business such that jurisdiction pursuant to § 301 is appropriate if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Mantello v. Hall, 947 F. Supp. 92, 97 (S.D.N.Y. 1996), quoting Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). This standard has been described as "stringent," because a defendant who is found to be doing business in New York in a permanent and continuous manner "may be sued in New York on causes of action wholly unrelated to acts done in New York." Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001), quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990).

Courts have relied on the following "traditional indicia" when "deciding whether a foreign corporation is doing business in New York . . . : (1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the existence of bank accounts or other property in New York; and (4) presence of employees of the foreign defendant in New York." Mantello, 947 F. Supp. at 97, citing Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985). Freeplay contends that its allegations regarding Beasley's activity demonstrate Beasley's legal presence in New York, even though Beasley has no office in New York, and no employees working on a regular basis in New York. Freeplay's allegations, however, do not show that Beasley has a permanent or continuous presence in New York sufficient to justify a finding of general jurisdiction.

Beasley's licenses and radio programming purchases from New York corporations are insubstantial activity to warrant general jurisdiction in New York. New York courts have held that "obtaining licenses is not 'doing business'" for the purposes of general jurisdiction.

5

Mantello, 947 F. Supp. at 98. Further, "the purchase of goods from New York by a [d]efendant, even if on large scale, would not, in an of itself, amount to 'doing business' within the state." Agency Rent A Car System, Inc v. Grand Rent A Car Corp., 916 F. Supp. 224, 229 (E.D.N.Y. 1996), rev'd on other grounds, 98 F.3d 25 (2d Cir. 1996). Therefore, Beasley's purchases of programming and licenses to broadcast copyrighted materials are insufficient to justify general jurisdiction.

Similarly, Freeplay's allegation that Beasely solicits advertising for its radio stations from New York companies reflects a mere business relationship insufficient to confer general jurisdiction. Reers v. Deutsche Bahn AG, 320 F. Supp. 2d 140, 155 (S.D.N.Y. 2004). Solicitation of business contracts can reach a level sufficient to support general jurisdiction only through "extensive conduct directed toward or occurring in New York." Id. at 150. Even actual advertising within New York is not considered to reach the level of substantial solicitation that would suffice for general jurisdiction. See, e.g. Muollo v. Crestwood Vill. Inc., 547 N.Y.S.2d 87, 88 (2d Dept. 1989) (finding defendant's advertisements in the New York Times and on the radio insufficient to support personal jurisdiction); see also Holness v. Maritime Overseas Corp., 676 N.Y.S.2d 540, 543 (1st Dept. 1998) ("New York has no jurisdiction over a foreign defendant company whose only contacts with New York are advertising and marketing activities plus representatives' occasional visits to New York."). Freeplay's allegations do not suggest that Beasley solicited advertising from local New York businesses, or advertising that was directed toward a New York audience, as opposed to advertising from national companies incorporated or headquartered in New York. Freeplay's allegation that Beasley solicits business from New York companies does not show that Beasley solicited that business in New York, or that the

6

solicitation was extensive or substantial. Thus, Beasley's advertising contracts with New York companies are insufficient to justify general jurisdiction.

Freeplay also alleges (and Beasley acknowledges) that Beasley has a contract with the New York bank Harris Nesbitt for the purposes of a $25 million stock buy-back. Regarding the stock buy-back, New York courts "accord[] foreign corporations substantial latitude" in connection with management of their securities on New York-based stock exchanges without subjecting themselves to New York jurisdiction for unrelated occurrences. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 97 (2d. Cir. 2000); see also Reers, 320 F. Supp. 2d at 156 ("[T]he fact that [defendant's] stock may be purchased in New York, and that [defendant] retains New York-based market makers to assist in its sales of stock, is another important factor but is insufficient to confer general jurisdiction."). Beasley's stock buy-back venture is limited in purpose and temporary in duration such that it does not create legal presence in New York.

Bank accounts can be grounds for general jurisdiction because they are a permanent locus of property or assets within the state. However, a "bank account[] standing alone cannot create jurisdiction unless [it is] used for 'substantially all' of [the defendant's] business." Id.[2] Freeplay alleges in a conclusory manner that Beasley runs its "day-to-day operations" through a revolving credit facility jointly administered by Harris Nesbitt and the Bank of New York (P. Mem. 2), but fails to make any specific allegations as to the role the credit facility plays in Beasley's business. By definition, however, a "credit facility" is a financing arrangement, not an operational bank

---

[2] Factors that have led courts to conclude that a bank account is a "substantial" part of a defendant's business include: (1) receipt and deposit of substantial portion of company revenue, (2) use for payment of employees, (3) use for payment of expenses, and (4) assistance from bank personnel in carrying out company business. United Rope Distrib., Inc. v. Kimberly Line, 785 F. Supp. 446, 450-451 (S.D.N.Y. 1992).

account.  See generally GE Commercial Finance Corporate Lending, Frequently Asked Questions, at http://www.gelending.com/Clg/Resources/lendingFAQs.html.  Plaintiff's allegation thus appears to assert, at most, that Beasley's "day-to-day operations" are financed entirely by borrowing through this credit facility, and not that its ordinary payroll and checking transactions are performed through the credit facility.  Generally, "[a] single financing arrangement, such as [a] credit facility, is insufficient to constitute the continuous and systematic activity required to warrant the exercise of general personal jurisdiction."  Int'l Telecom, Inc. v. Generadora Electrica del Oriente S.A., No. 00 Civ. 8695 (WHP), 2002 WL 465291, at *2 (S.D.N.Y. 2002).  Therefore, Freeplay's allegation regarding Beasley' credit facility is insufficient to support a finding of general jurisdiction.[3]

Freeplay also alleges that Beasley's radio broadcasts are available in New York via their websites.  However, "the fact that a foreign corporation has a website accessible to New York is insufficient to confer jurisdiction under C.P.L.R. § 301."  Spencer Trask Ventures, Inc. v. Archos S.A., No. 01 Civ. 1169 (LAP), 2002 WL 417192, at *6 (S.D.N.Y. Mar. 18, 2002).  Unlike a conventional radio station that requires a nearby physical presence in order to broadcast to a given geographical region, a webcast can be transmitted to a distant state without any further indicia of permanence in that state such as an office or employees.  "Moreover, even if such an exercise of jurisdiction were proper under § 301, it would not be permissible under the Due

---

[3] Further, Beasley's relationship to Harris Nesbitt and the Bank of New York via the credit facility does not amount to the type of true principal/agent relationship that, in other contexts, might serve as a basis for general jurisdiction.  To be considered an "agent," the banks "must be primarily employed by the defendant and not engaged in similar services for other clients."  Jacobs, 160 F. Supp. 2d at 737.  Neither of these conditions exist in this case.  Hence, the relationship between Beasley and the banks cannot serve as a basis for general jurisdiction.

Process Clause [of the Fourteenth Amendment to the U.S. Constitution] absent, at a minimum, an allegation that . . . the website was purposefully directed toward New York." Drucker Cornell v. Assicurazioni Generali S.p.A. Conso., No. 97 Civ. 2262 (MBM), 2000 WL 284222, at *2 (S.D.N.Y. Mar. 16, 2000).

It is undisputed that Beasley's radio stations, business premises, and employees are all located outside New York, and that the broadcast signals from none of its stations are heard in New York. The occasional and insubstantial contacts alleged by plaintiff, taken singly or together, are insufficient to amount to "doing business" in New York. Accordingly, Freeplay fails to allege any facts that justify general jurisdiction over Beasley.

III.   New York's Long-Arm Statute: C.P.L.R. § 302

   A.   Transacting Business in New York: C.P.L.R. § 302(a)(1)

Under C.P.L.R. § 302(a)(1), New York courts have specific jurisdiction over "any non-domiciliary [who] transacts any business within the state or contracts anywhere to supply goods or services in the state." "A nondomiciliary 'transacts business' under C.P.L.R. § 302(a)(1) when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." CutCo, 806 F.2d at 365 (internal citations omitted). The "ultimate determination" as to whether a foreign defendant "transacts business" in New York is made based on the totality of the circumstances. Agency Rent A Car, 98 F.3d at 29. The Second Circuit has said that a "variety of factors" may be considered in making this determination, including: (1) whether the defendant has an on-going contractual relationship with a New York corporation, (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has

9

visited New York for the purpose of meeting with parties to the contract relationship; (3) what the choice-of-law clause is in any such contract; and (4) whether the contract requires franchises to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Id. "Cumulative minor activities that, individually, may be insufficient, may suffice . . . as long as the cumulative effect creates a significant presence within the state." O'Brien v. Hackensack Univ. Med. Ctr., 760 N.Y.S.2d 425, 427 (1st Dept. 2003). Jurisdiction is only proper under this statutory provision where the cause of action "arises out of the subject matter of the business transacted." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). "A suit will be deemed to have arisen out of a party's activities in New York if there is an 'articulable nexus,' or 'substantial relationship,' between the claims asserted and the actions that occurred in New York." Henderson v. I.N.S., 157 F.3d 106, 123 (2d Cir. 1998) (internal citations omitted).

Individually, each of Freeplay's allegations with respect to Beasley's relationships with New York enterprises might not necessarily be sufficient to support a finding that Beasley transacts business in New York. See, e.g., J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 551 n.3 (S.D.N.Y. 2001) (finding that defendant did not transact business in New York even though defendant held a New York bank account and had various other business communications with New York parties). Taken together, however, Freeplay's allegations could show that Beasley has "on-going contractual relationship[s] with New York corporation[s]," and could therefore support a finding that Beasley transacts business in New York. Agency Rent A Car, 98 F.3d at 29.

Nevertheless, jurisdiction fails under § 302(a)(1) because the infringing conduct in question cannot be said to have arisen out of these business transactions. "For a tort claim to arise out of transaction of business in New York, the connection between the transaction and the claim must be direct." Mantello, 947 F. Supp. at 100. No relationship exists between Beasley's business transactions in New York and the alleged copyright infringement. Therefore, Beasley's contractual contacts with New York are not a proper basis for jurisdiction under C.P.L.R. § 302(a)(1).

The case is different with respect to Beasley's maintenance of a website through which internet users in New York could access the programming of at least of some of Beasley's radio stations. Freeplay's claims arise from the production and broadcast of such programming. Accordingly, if the maintenance of such websites constitute their transaction of business in New York, Freeplay's claims would have a significant nexus with those transactions.

The internet has complicated questions of personal jurisdiction. Although Second Circuit case law provides little guidance on this subject, Judge Sweet has aptly summarized the state of the law as it has developed around the country:

> [T]he courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a 'passive' web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the

exchange may be a basis for jurisdiction.

Citigroup, 97 F. Supp. 2d at 565 (citations omitted). Although this "sliding scale" model provides a useful guide to how courts have approached such claims in the recent past, it does not amount to a separate framework for analyzing internet-based jurisdiction, and traditional statutory and constitutional principles remain the touchstone of the inquiry. See Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297 F. Supp. 2d 1154, 1160-61 (W.D. Wisc. 2004) (rejecting notion that sliding scale framework represents a "specialized test" for internet jurisdiction, but finding that "[t]he website's level of interactivity may be one component of a determination whether a defendant has availed itself purposefully of the benefits or privileges of the forum state"); Winfield Collection, Ltd. v. McCauley, 105 F. Supp. 2d 746, 750 (E.D. Mich. 2000) ("[T]he ultimate question can still as readily be answered by determining whether the defendant did, or did not, have sufficient 'minimum contacts' in the forum state.").

Beasley's alleged broadcast of sound compositions over its stations' websites cannot serve as a basis for jurisdiction under § 302(a)(1). Although there may be interactive elements to the websites, the simulcasts of the radio broadcasts are as passive an enterprise as are the radio broadcasts themselves. See Realuyo v. Villa Abrille, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at *6 (S.D.N.Y. July 8, 2003) (finding that the "sheer availability" of an allegedly defamatory article on the defendant's website, "where it can be downloaded in New York at no cost" could not be considered a transaction of business sufficient to sustain jurisdiction under either C.P.L.R. § 302(a)(1) or due process). Freeplay also fails to allege that New York residents ever accessed Beasley websites for the purposes of listening to Beasley radio station simulcasts. It stretches the meaning of "transacting business" too far to subject defendants to personal

jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred or was actively sought. Cf. Citigroup, 97 F. Supp. 2d at 566 (finding personal jurisdiction where bank not only maintained website equipped to take loan applications and provide online chat with bank representatives, but also engaged in direct mail solicitation of New York businesses). Therefore, Beasley does not transact business in New York when it simulcasts its radio programming via its websites, and is not subject to jurisdiction under § 302(a)(1).

B. Tortious Action Within New York: C.P.L.R. § 302(a)(2)

Alternatively, under C.P.L.R. § 302(a)(2), a foreign defendant may be subject to personal jurisdiction in New York if he "commits a tortious act within the state." New York courts have interpreted the statutory language "within the state" literally, such that jurisdiction is only proper over a defendant who commits a tortious act when the defendant is physically present in the state. See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28 (2d. Cir. 1997) ("The official Practice Commentary to C.P.L.R. § 302 explains that 'if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, [New York case law] would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff.'"). In copyright claims, § 302(a)(2) jurisdiction exists only when the allegedly infringing work is offered, displayed or sold in New York. Mantello, 947 F. Supp. at 101.

It appears that Freeplay means to allege that because the infringing sound compositions were broadcast via Beasley websites, they were made available in New York such that

jurisdiction under C.P.L.R. § 302(a)(2) is appropriate. However, "[a]lthough it is in the very nature of the internet that the allegedly infringing [material] contained in these web sites can be viewed anywhere, this does not mean that the infringement occurred everywhere." Citigroup, 97 F. Supp. 2d at 567. "[C]ourts have held that in the case of web sites displaying infringing [material] the tort is deemed to be committed where the web site is created and/or maintained. Id. at 567; see also Bensusan, 126 F.3d at 29 (holding that a jazz club in Missouri with the same name as a famous jazz club in New York was not to be subject to jurisdiction under § 302(a)(2) on ths basis of its website since the website was created and maintained in Missouri). Freeplay makes no assertions that the websites were created or maintained in New York, and thus, Beasley is not subject to jurisdiction under § 302(a)(2).

    C.    <u>Tortious Action Outside New York:  C.P.L.R. § 302(a)(3)</u>

Under C.P.L.R. § 302(a)(3), a foreign defendant may be subject to personal jurisdiction in New York if he "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." "Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a 'situs-of-injury' test, . . . locat[ing] the 'original event which caused the injury.'" DiStefano v. Carozzi, Inc., 286 F.3d 81, 84 (2d Cir. 2001). The original event is "distinguished [both] from the initial tort [and] from the final economic injury." Id. For New York courts to have jurisdiction over a tortfeasor outside of New York, the first injury resulting from the tort must be felt inside New York. See, e.g., Hermann v. Sharon Hosp., Inc., 522 N.Y.S.2d 581, 583 (2d Dept. 1987) (finding that the first injury was felt outside

of New York when a New York plaintiff received negligent medical treatment in Connecticut, even though the plaintiff continued to feel the injury when she returned to New York).

Freeplay has alleged that Beasley used its copyrighted sound recordings and musical compositions without the requisite "synchronization license." In cases of commercial torts, "the place of injury will usually be located where the 'critical events associated with the dispute took place.'" Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1054. In this case, the "critical events" are Beasley's alleged unlicensed use of Freeplay's recordings and compositions. Yet, Freeplay has not alleged that the Beasley's unlicensed use took place in New York, or even that New York residents accessed Beasley's webcasts and listened to the infringing sound performances. Freeplay claims only economic loss as a result of the alleged unlicensed use of their copyrighted material. Any economic loss suffered, however, is only a consequence of the injurious unlicensed use and is not the injury itself. See Plunket v. Doyle, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *3 (S.D.N.Y. Feb. 22, 2001) (finding a New York copyright holder is injured where the infringing use occurred, and "the mere fact that the plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under § 302(a)(3)"). Therefore, jurisdiction under C.P.L.R. § 302(a)(3) is not justified.

## CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction is granted.

SO ORDERED.

Dated: New York, New York
June 22, 2005

GERARD E. LYNCH
United States District Judge